All right, our second case for this morning is Hirst v. Skywest, and so Council can come up and we'll hear when you're ready from Ms. White. All right, Ms. White. Yes, may it please the Court. My name is Lisa White and I represent the lieutenants who have worked for or do work for Skywest Airlines. Just for context, Skywest Airlines supplies planes for Delta, United, USA, or other airlines under the mainline carrier's name. This case is pretty basic. Unlike virtually every other hourly employee work group, for the Skywest flight attendants, their wages go down as their work days get longer. Their wage rates, their hourly wage rates, are in a progressive state of going down. So one of the things that worried the district court here, let's take the FLSA claims first and then we'll deal with the dormant commerce clause in the state-based claims. In the FLSA claims, the district court, as I understand him, read the complaint and couldn't find allegations that would indicate that there was ever a work week in which the hourly wages of any of the plaintiffs fell below $7.25 an hour, the minimum. Can you address that? Yes, I understand perfectly. And one of the problems is that for the flight attendants, their trips are between one and four days long. And a trip being, they start at their base, they fly other places, and then they come back. Sometimes it's one day, and sometimes it's as long as four days. So is it your view that they're on duty status from the time they Are they off in the night? No, there's actually a term for the entire, that entire time, which is called time away from base. In the glossary that we included on, I think, the fifth or sixth Roman numeral page, that is called time away from base. Maybe I didn't put it on there because we didn't talk about it as much. Duty time is different. Duty time is the time from the first report of the day, the report time, to 15 minutes after the plane door opens at the end of that day. Right, and what the district judge says he's worried about is that, and I understand that SkyWest has this unique block time idea, but he says, well, how many additional hours would it take to have that hourly rate dip below the minimum wage? And he thought it was an implausibly large number of hours. Like, where are these other 35 hours over a course of days or five hours a day going to come from? And I wonder, this is really in some ways about Rule 8, you know, how much did you have to plead to show that there were some significant weeks in the year? I don't know whether your theory is the work week, whether it's the work day, whether it's the trip, you know, but precision there would help me too. Actually, that's exactly one of the reasons why we feel like we have met the Rule 8 standard, because we had piecemeal documents, and within the appendix, those are showing. But when the district court started doing the math and saying, well, the example was for Sarah Hudson, was working in California, and we had alleged that in a 15-day period, she made $7.83 an hour, no overtime. So that was a clear allegation, and we said, we cannot tell how much she made in an exact 7-day period. The reason we can't is because, number one, you've got a 15-day payroll period. You've got records that show the 1- to 4-day length, and the interesting part of that— So your theory has to be that that 7.83 is an intermediate number, and that maybe if, because she was in, you know, Los Angeles, maybe she had to leave early to get to the airport because of the L.A. traffic, and so there were really actually enough additional hours that it went below 7.25? Oh, no. Oh, no. Leaving three hours early to get to the airport doesn't count. It doesn't count until you're—it actually, they're not counting duty day. Well, do you think it should count? But she would get to the—someday she would get to the airport way earlier than she needed to because she budgeted this extra time, and she might log in. That's still not duty day. The duty day doesn't start when she has actually logged in after security. But are you claiming it should be? Are you claiming this is time she should be compensated for? That part is a question of law because at the point— So where do you get the 7.25 from her example? Well, from—so from her example, it's actually fairly easy, and again, this is a factual issue, and we think as a matter of law, we should not have had to come up with the exact week that she was paid less. We think that we— Can I just interrupt you and say, you know, if the pleading as a whole reveals no time when the person was paid less than the minimum wage, why wouldn't the district judge have been within his rights to say, you've pleaded yourself out of court? You know, suppose—I'll make a round number—suppose your pleading says every week of the year, they were paid at least $8 an hour, sometimes more, sometimes only $8. Well, that wouldn't state a claim under the FLSA, would it? No, it would not. No, and you would have pleaded yourself out of court. So what I'm trying to figure out is what in your complaint would allow the district court to make a plausible inference, plausible, that there was any significant time when she was below, or any of the plaintiffs? Actually, it's fairly easy. The math is easy. You know, we don't think that we should have had to go to that point, but— Well, why shouldn't you allege it plausibly? In a 15-day period, her wages were $7.83, and that part we know and we can prove. We can prove. But if you, instead of alleging—he's held us to a 15-day averaging here, even though he's saying it's a 7-day measure. But if you instead prorate that day-to-day and say one week maybe they made $10 an hour in reality, the following week they would have made—she would have made $10.79. I understand that as a hypothetical possibility, but what I'm concerned about, if that's your answer, is why—what takes that beyond the speculative? I mean, you say that, yes, that could be maybe she works one hour one week and all the rest of the hour is the second week, but that doesn't—what takes that beyond speculation? Well, when you—I think that the plausibility standard with—under ICBL, the plausibility standard is that you don't—you are not required to absolutely prove—you're not required to point this is 7 days. I agree with you way more, and I have written a lot of opinions to myself, as have other members of this Court, that say you don't have to prove your case, but you do have to show enough, I think the way it's sometimes put, to make the story hang together. You've got to show that it could have happened, but you can't just say, you know, completely speculatively. You have to, you know, maybe, as the District Court was saying, tell us a little bit more about business practices. Tell us about what route she was flying those weeks. That information I gather was available to you. We had—we had parts of that information, but it does not coordinate with the wage information that we have, and if you will—let me—if you will look at—I've got some exact—well, for example, if you'll look at—in the appendix at a later point, the documents between A-98 and A-100, the documents that were provided to us voluntarily, we never got to the point before the second set of appendices—I mean, before the second set of amended complaints were available, Sky West fought us to give us any documentation— Well, I realize that they were terrible documents. If you look at those documents, what has happened is they've mixed every plaintiff together, both from the California and the Illinois cases. They have stripped their names off. They've sorted them by date, and it's—the documents that we were working with did not include all information that would be necessary to actually measure this, so— Forgive me, but regarding the, you know, the FLSA claim, is it true, as Sky West alleges, that you informed the district court that you didn't require further discovery in order to respond to the motion to dismiss? We believed that for the state law claims, we very clearly have plausible allegations in our complaints. For every single plaintiff, we have listed the specific weeks that we can tell that they worked more than 40 hours. Is that a yes or a no? I don't know what you mean. Judge Rover wants to know, did you tell the district judge, we don't need any more discovery right now? For plausibility, yes. All right. So that's a yes. So if you did, how is it that you're now complaining that you lack the evidence to adequately allege the claim of the federal minimum wage violation? I mean, that's really hard for me to understand. The threshold issue with the state law claims is whether flight attendants as an employee group have no protection from any state wage laws. If we're switching over to the Commerce Clause, I think there are plenty of questions that need to be asked, but I'm not sure that we're finished. I think if we're still on the FLSA— And following up on that, is there any federal courts that you're aware of that have ever applied an hourly measure to the FLSA as opposed to the per workweek? No. The measures of the FLSA, even the courts that the defendant cites, the measures in the courts, they say—and I think that this is correct—they say that it has to be a has to be logical under the circumstances. That's not the exact quote. But we don't think that there should be a strict seven-day, you have to allege a violation within these seven days. We also don't think there necessarily needs to be a one-day measure. We think that the workplace— In other words, I'm trying to wrap my head around what would do it. For the FLSA, because I don't want you to run out for the Commerce Clause. For FLSA, in the airline industry, the trip measure would do it. The workdays— So you're basically just saying it's an industry-by-industry measure, and maybe workweek is often a very sensible way to do it, but there could be industries that aren't. If I can just put words in your mouth. I want to just ask you a quick question about the Commerce Clause, really about your theory. I take it your theory really is that in 218, Congress has already spoken to the preservation of state and local law, and there's nothing in that section that has an asterisk that says except flight attendants, or except anybody else, and so this is not a dormant Commerce Clause situation at all. Is that your view? That is part of it. That's half of it. The other half is that within the Fair Labor Standards Act, they do specifically make an exception—actually, I'd like to get my colleague to give me some water, if you wouldn't mind. They do make an exception under 213B for interstate transportation workers. They say that interstate transportation workers are not entitled to overtime. So they know that the flight attendants are there. They have this other provision of the law that says in this particular instance, federal law is providing a floor, not a ceiling. I'll paraphrase, and in your view, that means that we're not in a pike against Bruce Church balancing situation, period? No, I think pike is perfectly appropriate here, because I do think that there is a balancing that you need to do. Why is there a balancing if there is an affirmative decision by Congress under the Commerce Clause? There are cases that also say that, but the Wayfair opinion is extremely important, and but Wayfair is pointing out that even though it's complicated for interstate retailers to charge state taxes depending on where the product has landed, even though it is complicated, it is not as complicated with the newest technology. Now, you argue that other airlines are able to comply with the varying state wage laws, but is that done by simply paying a higher wage that would therefore meet all state requirements? Is there any evidence that another airline actually tracks the varying state wage laws and alters its pay rate as to comply with the minimum standards in each state? Many if not most other airlines have more than one formula for wages. An excellent example and a really clear description is in the Descent case, Descent versus Delta, which is Massachusetts' case. They describe how Delta actually has four formulas. They have a formula that is nearly identical to the SkyWest one, which is only flight time, and then the rest of the day is taking that wage down. But Delta, probably the most applicable one, is Delta says the length of your duty day, so from your report time to 15 minutes after, if you take half of your hourly wage, so just as a hypothetical, if the flight attendant is making $20 an hour for flight time, then Descent, or Delta actually, has a secondary measure. It says if your entire duty day from report time to the end of the day, if you are paid less than whatever amount, well, it's a balancing actually, they have an adjustment where you are paid $10 an hour for your entire duty day. Yes, SkyWest could do that. It's not that difficult, and that shows you that during your duty day, you will always be making at least $10 an hour. So they could pick that number to be $7.25, or they could pick that number to be anything. Correct. Okay, correct, so you are one minute away from using up all of your rebuttal time, so I will invite you, if you wish to save that, to save it now. Well, we think that the Wayfair is very informative for this case. Of course, it came out after the briefing. The cost of doing business in a state includes wages and it includes taxes. In every single state, that's part of the cost of your business. Okay, thank you. Yes, welcome back, Mr. Schenberg. Thank you, Your Honor. It is an honor to be back before Your Honors again so quickly. In the same courtroom, too. In the same courtroom. It's a more intimate setting, I think. Right, definitely. Do you miss the others? I welcome all comers. May it please the Court, I'd like to first discuss the federal minimum wage claims and then move on to the state claims. Plaintiff's theory in the district court . . . Fair enough. In fact, why don't you just start with Wayfair, if you don't mind. Sure. I mean, our claim here is fundamentally that the problem is not that we have employees in many states or that we might have to deal with different state laws. The plaintiff tried to say that, well, SkyWest is no different than Walmart or Starbucks. The problem is that Walmart and Starbucks employees don't cross state lines multiple times every day, and that is really why flight attendants are different. Here's what I want to ask you about that. Sure. Flight attendants are certainly in that category, but many traveling salespeople would be in that category. Many people who are in the consulting business are in that same category, and if you work for McKinsey, you're in Minneapolis one day and you're in Des Moines the next day and you're somewhere else. What I'm troubled by your argument is that there is a statute. Congress has spoken to this. That's my part one concern about your position. If Congress had wanted to say, oh, experience has shown us that this is actually really too cumbersome for people like SkyWest or McKinsey or, you know, John Deere or whoever it is, maybe we should change this law. I mean, that would be fine. Congress preempts the field when it wants to. My secondary level concern is if there is any room for the dormant commerce clause in an area where Congress has actually spoken, and let's assume for the sake of argument maybe there is. I find the balancing test one that depends on facts, and the district judge did not have facts in front of him. So why we don't need at least to get a better, you know, a more appropriate balancing. So that, you know, take what you wish, but those are all concerns. Sure. First, on the question of the balancing test, there's no question the dormant commerce clause is ordinarily a defense. And it ordinarily applies when Congress hasn't spoken, when a state has passed a law that discriminates against interstate commerce. I certainly want to speak to the question of what Congress said about states being allowed to have higher minimum wages. With regards to the balancing test, the plaintiffs have asserted that, well, the district court should have taken account of, for example, these local benefits. And burdens. I have no idea how burdensome this would be on you, because apparently a huge amount of the information is already in your computers, and for all I know, you know, getting some clever 22-year-old to write you a little code might solve the whole problem. So the district court, it assumed plaintiffs' local benefits. It just did that in its order. But it assumed your burdens, too, and I don't see any evidence. I think that if you look at this court, actually, in Legato Vapors, Judge Hamilton just last year talked about... I was on that panel, so actually they're all opinions of the court. Talked about the burdens that necessarily follow. And these are burdens that necessarily follow from the state-to-state-to-state nature of flight attention. But how big are they? Are they like a mouse, or are they a mountain? Well, the problem with the burdens is not just, of course, keeping track of how much time everybody spends as they move across... How can that decision have been made on a motion to dismiss the judge? The reason is because the plaintiff's... Yeah, I'd like to finish. I apologize. I thought you were finished. I'm slower than some. No. You know, particularly given that the Supreme Court's recognition that it's commerce clause jurisprudence eschews formalism for a sensitive case-by-case analysis of purposes and effects. This is a motion to dismiss. There's so many things we don't know. Well, if I may, we do know many things from the face of the... Not enough. Well, perhaps I can persuade you otherwise. The complaint certainly details how flight attendants have these unpredictable schedules. Even when they have schedules, they have layovers. They have things literally affected by the weather. But most importantly... But it also says that you have the computer records of all of this. There's... It's not... First of all, there is a great burden, of course, in keeping track of where all 2,600 flight attendants are at every moment. And when they cross over... That's your business. Is that a burden? When they cross state borders, when they cross state borders, and when they cross into local jurisdictions that have their own minimum wage laws, et cetera, et cetera, et cetera. But again... Is it a unique burden for SkyWest as opposed to every other airline in the country? Well, absolutely not, which is why there are many of these cases against various airlines, and in several of which the courts have ruled that the dormant commerce clause is a defense. But the burden is really not just the fact of keeping... The burden is not just keeping track of where everybody is at every time. The burden is the inherent one that can be recognized simply at looking at all the state laws that says, for example, California is just one state. California is just one state. They can't even agree when their law applies. Different courts in California disagreed. The Ninth Circuit had to ask, certify questions to the California Supreme Court. California courts said, well, we have a multi-factor test. We have a primary test. So lobby Congress to repeal Section 218. Well, Section 218 is actually not a problem, and I'd be happy to get there, Your Honor. Before we get there, it looks like the district court spent about a page, page and a half, in Hearst 1 discussing this, and points out that they didn't think the plaintiffs had only one response. He gets to the second opinion, and I'm on pages 25 to 26. He's about a page on it. Weren't there some discussion of the burdens? But there isn't the type of detailed weighing and balancing that one would expect before you take away plaintiff's claim under state statutes that would result in them possibly having some recovery. Obviously, we've got to respect these state legislatures who've come up with these laws, been signed and enacted, and yes, the case law exists for purposes of recognition of this type of thing. But before we as a court take, federal courts take those big steps, we want to know that it's appropriate to occupy that field. And it's maybe one of the challenges that we're trying to isolate here is it's only about a page in Hearst 1 and about a page in Hearst 2. Well, I think that the description that the district court gave of the nightmarish scenario that SkyWest or really any airline that regularly crosses... I don't know if it's on the other side. Where do plaintiffs have the ability to counter? I mean, if your view is that the district court is obliged to take the defendant's representations without challenge, I don't know where that comes from. We would not have filed a 12 v. 6 motion if it hadn't been for the fact that all these allegations about the constant crossing over state lines, interstate commerce, including many local jurisdictions that have their own laws, all of that is pleaded right in the complaint. And I've told you there are many other industries that I can think of right off the top of my head where you would say the same thing. I think there are many other industries where people cross state lines, there's no question about it. But to cross state lines multiple times in one day... So what if you have the Quad Cities territory for John Deere tractors or something, you're in a number of states. It's certainly possible that there are individuals out there that cross state lines all the time. There may be. The district court has to have an opportunity, which it didn't take, to consider the nature of the burden on SkyWest, including the feasibility of compliance, the nature of the airlines, such as whether it has a regional or a larger presence. Other factors, such as the ability of other airlines to comply with state wage laws. And that can't be done without factual development. It isn't fair. Well, I would say this, that what the district court focused on mostly, and what I'd like this court to focus on, is the fact that it is impossible for an airline to comply with both California law and Washington state law when they both claim exactly the same time. So we don't have that case in front of us, I'm going to point out. And it seems to me if we had a case where SkyWest was being accused of not complying with Washington state law because you were complying with California law, and by the same token, the other thing, this actually happens internationally as well, then we would have a properly presented question of whether when Congress said state laws apply, whether there's some relief from that, whether it's simply impossible, whether it's a due process problem. I mean, I can imagine theories, but I don't see that as this case. Well, instead what plaintiffs pleaded, instead what plaintiffs pleaded is that the state where their base airport is provides the law for them everywhere. And that's a German commerce clause violation by itself. As this court would have pointed out in Legato Vapors, you can't have one state that says our law applies everywhere. And even if the state said that, of course, that inherently brings in all the other states that might say, well, our law says this and our law says that. And that's what the district judge was getting at. But we do this all the time. So I'll tell you about my own pay stub. My pay stub says that I live in Illinois. True enough, that's where my house is. And so Illinois withdraws income tax from my pay stub. Twice a year, I have to go to Washington, D.C. to attend the Judicial Conference of the United States. Absolutely work-related, you know, have to do it. D.C. is not deducting income tax from my paycheck for that. It's understood that my duty station is here in Illinois. And states work with that kind of allocation all the time. So again, I feel like you are trying to raise a question that might be two steps down the line, but I don't think it's a question that we have here. If your judicial conference were in California, the California Supreme Court would say, well, that California does lay claim to your time. But it doesn't, actually. I mean, we've had Judicial Conference Committee meetings in California. It may not as a practical matter. Maybe nobody brings that up. But California would say, under the Sullivan v. Oracle case, they would say, if you've spent an entire week in California, California applies to that time. The only time they've done that is with very highly paid professional athletes who have I would like to talk about the issue of what Congress has actually authorized. And I understand that. I will leave you on the other subject with the fact that SkyWest and the other airlines are faced with a really an impossible task of what to do when multiple states, A, aren't sure about what their own state's laws are. B, two or more states may claim the exact same time. Now, the first problem would exist even if you were a purely intra-California carrier. You'd still have to figure it out. And I take it you wouldn't then claim that you weren't obliged to abide by whatever California decides its law is. The real problem is from the multi-jurisdictional nature of the work and how often that happens, how unpredictable the schedules are, but also the fact that more than one state would claim the same exact time. And you know what the California Supreme Court says to do in that case in Sullivan v. Oracle? They say, well, we apply a conflict of laws analysis. Well, now, on top of everything else, SkyWest is supposed to sit in its headquarters in Utah and say, well, we're going to apply a conflict of laws analysis. That's a job for a court. There's no question in a certain case that a court might bring that up. But the real dormant Commerce Clause argument is that it's an impossible task for an airline, and an airline that would have to do it every day with 2,600 flight attendants whose schedules change all the time. So not only does it have to do it once, it might have to do it every week. The same exact, this sort of judicial task that is not fair to ask of an airline. And, of course, interstate commerce being the quintessential subject of the Dormant Commerce Clause. How do the other airlines do it? The other airlines don't do it. They're all in litigation right now, including the Delta case that Plaintiff refers to, that case, the airline, first of all, won the case because the plaintiffs misunderstood their own paychecks. It was very simple. The district court just said, we don't really have to go any further than this. But that case is on appeal to the Ninth Circuit. It's where all these certified questions to the California Supreme Court are coming from. Are you saying every single airline is in litigation? Our brief is full of airline cases. I know. But every. But they're not 12B6 cases. They're summary judgment cases. And that's my issue. I may be above procedure too much. I may not be able to convince you of that. But it seems to me that these burdens follow naturally from the fact that these flight attendants have these kinds of schedules. It's going to be different depending on what the state law is. Because some states have laws that I think would be easier for anybody to comply with ex ante than other states. You're taking maybe the nightmare scenario case. Illinois has a law that's much easier to comply with. There's no question. This court could affirm the district court's order just on the grounds that. Or reverse and send it back to the district court and say take a look. It could affirm simply on the grounds that not only are there no allegations with regards to the Fair Labor Standards Act. It's the same is true of time spent in Illinois, for example, or the other states. I mean the complaints are sparse in that regard. But let me talk about the issue of whether Congress authorized the Dormant Commerce Clause. If you want to say a quick word about FLSA, that would be fine too. Okay, thank you. There is an authorization rule. But it only applies where Congress has demonstrated an unmistakably clear intent to permit the specific Dormant Commerce Clause violation at issue. Congress hasn't come close to that. Where do you get that from? You probably know this perfectly well. But there are people who've written interesting scholarly articles who wonder whether there is even a Dormant Commerce Clause. Agreed, but of course we all agree that the Supreme Court says there is. The Supreme Court is still on that page, I understand. But it doesn't mean that you push it out to the outer limits. Congress isn't always this nice to us. But when Congress puts a section in a statute that tries to tell us how we should have federal law and state law interact, then it's our job to follow that section. I don't disagree, but I do want to make first a procedural point that this argument about specific authorization seemed to me to be made for the first time in the reply brief. But granting that, I don't think it holds water anyway. The FLSA provision that's cited says that it allows states to have higher minimum wages than the FLSA. But that does nothing other than disavow preemption on that issue. It doesn't speak to the Dormant Commerce Clause, and it's only on that one issue. That's just language of the statute. No provision of this act or of any order there under shall excuse non-compliance with any federal or state law or municipal ordinance establishing a minimum wage that's higher. In other words, federal law is a floor. They can go up. That's what they're arguing. They're not saying accept flight attendants. They're not saying accept pilots. I am not making a Dormant Commerce Clause argument that says that the problem is that these states are having higher minimum wages. Walmart could say they wouldn't, but Walmart could say, I suppose, well, it's a Dormant Commerce Clause problem because we have to pay those high minimum wages in Los Angeles. And this would be an answer to that. No, I understand. But it's not an answer to my problem. It's not an answer to the airline's problem. Because we're not complaining that there are higher minimum wage rates in given states. That's not the problem. You're saying you don't want to pay them. You're saying you don't want to have to comply with the state laws. That's not the problem. The problem is that it's impossible to comply with this patchwork of laws every day for a flight attendant. We are not saying, we are not Starbucks saying it's a problem because we have different ones here and here and here. We are saying it's a problem because the same flight attendant has a different one here, here and here. The same person. So you're saying Congress passed a statute that violates the Dormant Commerce Clause? Yes, you are. Because Congress' statute says you have to comply with these state laws. You're saying it's impossible. Maybe you're right. Maybe it is impossible. Let me just give you an example of how this authorization principle should work and why it doesn't work here. Far broader recognitions of state power have been held not to authorize Dormant Commerce Clause violations. For example, Section 7 of the Bank Holding Company Act explicitly gave states continuing power to regulate bank holding companies. Nonetheless, the Supreme Court held in Lewis v. BT Investment that the act did not authorize a Florida statute to violate the Dormant Commerce Clause because it didn't speak to the Dormant Commerce Clause problem that was created by the state law. Instead, it said that that federal banking act reflected only a statement that violated the Dormant Commerce Clause. And that's the same here. Congress is just saying hey, this is a floor. It's not a ceiling. We're not complaining about their having compliance with laws though. Well, if you don't buy that argument, let me try this one. The state law allegations in this case are not just about the minimum wage. They're about overtime. They're about bank wage statement cases. So this certainly doesn't speak to all of those other things. Okay. That's a sensible point. Thank you, Your Honors. I hope to be back soon again. Yes, I know. We'll see you tomorrow. Ms. White. Yes, Your Honor. That all sounds really good except for when you look at actual people, including some of our plaintiffs. We have Sarah Hudson worked 108 flying days. Of those, 40 she never even left the state of California. Ever. One time. So it's not that difficult to figure out on those 40 days she didn't leave California. She lived there. Sky West chose her domicile. They chose her base. That's where they put her. They could have put her in Illinois. They didn't. She worked seven different weeks. And these are allegations that are in the complaint. Like on paragraph 101 of the amended complaint in TAP, she worked 58 hours one week. She didn't get overtime. And yet, this is the person who on 90... But the statute doesn't give her overtime. That much is clear. Right. And under Fair Labor Standards Act, she doesn't get overtime. Under California law, she would. She's not leaving. 90 of her 108 days, she was spent the night in California. You need to wrap up. So we do feel like we have viable state wages. The other thing about it is the airline chooses the domicile. If they want to put all of their Chicago flight attendants in Springfield and not pay the upcoming rate, they're not going to have to. They could put them all in Springfield. It's not convenient. It's not convenient. Thank you very much. Thanks to both counsel. We'll take the case under advisement. Thank you. The court is going to now take a brief five-minute recess.